## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

|  |  |
|---|---|
| REGIS LEO PHELAN, | |
| *Plaintiff*, | |
| v. | Civil Action No. 24 - 939 (LLA) |
| KRISTI NOEM, | |
| *Defendant*. | |

## <u>MEMORANDUM OPINION</u>

Regis Leo Phelan brings this reverse discrimination action against Kristi Noem in her official capacity as the Secretary of Homeland Security.[1]  Mr. Phelan alleges that the Federal Emergency Management Agency ("FEMA") within the U.S. Department of Homeland Security ("DHS") discriminated against him, retaliated against him, and created a hostile work environment in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.*, in connection with his two unsuccessful applications for a leadership position in FEMA.  Pending before the court is the Secretary's motion to dismiss.  ECF No. 21.  For the reasons explained below, the court will grant the motion and dismiss Mr. Phelan's case.

## I.      FACTUAL BACKGROUND

The following factual allegations drawn from Mr. Phelan's amended complaint, ECF No. 20, are accepted as true for the purpose of evaluating the motion before the court, *Am. Nat'l*

---

[1] Mr. Phelan named former Secretary of Homeland Security Alejandro Mayorkas as Defendant, but Secretary Noem is "automatically substituted" as a party pursuant to Federal Rule of Civil Procedure 25(d).

*Ins. Co. v. Fed. Deposit Ins. Co.*, 642 F.3d 1137, 1139 (D.C. Cir. 2011).  The court further takes judicial notice of documents from the administrative proceedings underlying this action.  *Golden v. Mgmt. & Training Corp.*, 319 F. Supp. 3d 358, 366 n.2 (D.D.C. 2018) (explaining that "[i]n employment discrimination cases, courts often take judicial notice of [Equal Employment Opportunity Commission ('EEOC')] charges and EEOC decisions" in evaluating a motion to dismiss).

Mr. Phelan, an "Irish/Italian" American Caucasian man who is over sixty years of age, joined DHS as a Grant Specialist in 2006.  ECF No. 20 ¶¶ 77, 135.  He was subsequently hired as a Federal Coordinating Officer ("FCO") at FEMA and completed details to Senior Executive Service ("SES") positions within the agency.  *Id.* ¶¶ 26, 77.

In May 2017, Mr. Phelan was involuntarily transferred from his position as an FCO to a detail in FEMA's Office of Equal Rights ("OER"), a position with "an undefined status and no clear position or duty station."  *Id.* ¶¶ 2, 12.  No female FCOs were similarly transferred.  *Id.* ¶ 3. The day after his transfer, Mr. Phelan traveled to the District of Columbia to file a complaint with the then-Acting Administrator of FEMA.  *Id.* ¶ 4.  Mr. Phelan also "appealed to" FEMA managers, FEMA's Office of Professional Responsibility, DHS's Office of the Inspector General, and its Office of Special Counsel.  *Id.* ¶¶ 4-5.  After he opposed the involuntary transfer, Mr. Phelan was never deployed as an FCO again and was demoted.  *Id.* ¶ 7.

In September 2017, Mr. Phelan was asked to serve as OER's Acting Director, and he held this position until July 2018.  *Id.* ¶¶ 14, 22.  In December 2021, Mr. Phelan applied to become the Director of OER.  *Id.* ¶¶ 21-22; ECF No. 23-1, at 3.[2]  Mr. Phelan was among six competitive

---

[2] When citing ECF Nos. 1-1, 21-1, and 23-1, the court uses the page numbers generated by CM/ECF, rather than the document's internal pagination.

candidates who were identified and referred to a three-member screening panel. ECF No. 21-1, at 50-51. The panel rated each candidate as "Not Qualified," "Qualified," or "Highly Qualified." *Id.* Mr. Phelan received an overall rating of "Qualified," while two candidates received ratings of "Highly Qualified" and were referred for interviews. *Id.*; ECF No. 20 ¶¶ 30, 72. The screening panel expressed a preference for candidates with "a full career in civil rights who had a law degree," but those criteria were not listed in the position description. ECF No. 20 ¶¶ 27-28, 75-76, 84-88, 120, 128, 130-31. In February 2022, Mr. Phelan was notified that he would not receive an interview. *Id.* ¶ 69; ECF No. 1-1, at 3.

None of the candidates was ultimately selected for the position, ECF No. 20 ¶ 72, and the vacancy announcement for the position was canceled, *id.* ¶¶ 113-14. After the cancellation, Mr. Phelan asked for the names of the members of the screening panel and information about the hiring process, *id.* ¶¶ 100, 102, but the Director of Executive Resources denied his request, *id.*; ECF No. 1-1, at 3.

FEMA reposted the OER Director position on March 24, 2022. ECF No. 21-1, at 81. Mr. Phelan reapplied for the position and was one of seven candidates referred to a new three-member screening panel. *Id.* at 91-93. Like the first panel, the second screening panel preferred a candidate with a law degree. ECF No. 20 ¶¶ 87-88. Mr. Phelan received an overall rating of "Not Qualified" from the second panel, although some panel members initially gave him higher ratings before they met as a panel to finalize their recommendations. *Id.* ¶¶ 53-57, 140-45; *see* ECF No. 21-1, at 90-93; ECF No. 23-3. As a result, Mr. Phelan was notified on May 27 that he would not receive an interview. ECF No. 20 ¶ 132. The panel rated four candidates as "Highly Qualified," referred each for an interview, and ultimately selected Leslie Saucedo, a Hispanic female attorney who had been serving as OER's Acting Director since July 2020 to fill the

position.  *Id.* ¶¶ 33, 37, 58; ECF No. 21-1, at 91-92.  Mr. Phelan requested information about the hiring process, but FEMA "ignored" his request.  ECF No. 20 ¶ 132.

## II.    PROCEDURAL HISTORY

Mr. Phelan first contacted a DHS equal employment opportunity ("EEO") counselor on March 26, 2022.  ECF No. 20 ¶ 25; ECF No. 21-1, at 3.  On April 25, he filed a formal EEO complaint alleging that FEMA had "subjected him to a hostile work environment and discriminated against him on the bases of race (Caucasian), national origin (Italian/Irish American), sex (male), color (white), and reprisal for prior protected EEO activity" when it (1) denied his request for the names of the members of the first screening panel for the OER Director position; (2) canceled the original vacancy announcement for the OER Director position; (3) declined to interview him for the OER Director position in February 2022; and (4) declined to interview him for the reposted OER Director position in May 2022 and subsequently ignored his request for information about the hiring process.  ECF No. 21-1, at 3 (formal complaint); ECF No. 1-1, at 2 (EEOC decision).[3]  DHS completed an investigation, provided Mr. Phelan with a copy of the investigation report, and notified him of his right to request a hearing before an EEOC administrative judge ("AJ"), which he did.  ECF No. 1-1, at 3.  An EEOC AJ thereafter determined that Mr. Phelan had not sufficiently alleged employment discrimination, and that, even if he had, FEMA had legitimate, nondiscriminatory reasons for its actions.  *Id.*  The EEOC's Office of Federal Operations affirmed the AJ's decision in January 2024.  *Id.* at 2.

---

[3] It appears that Mr. Phelan amended his formal EEO complaint to add the fourth allegation concerning his non-selection in May 2022, which occurred after he filed his initial complaint in April.

In March 2024, Mr. Phelan, proceeding pro se, filed suit in this court. ECF No. 1. In June, through counsel, he refiled the complaint. ECF No. 5. In September, after the Secretary had moved to dismiss, ECF No. 15, Mr. Phelan filed an amended complaint, ECF No. 20. The Secretary again moved to dismiss, ECF No. 21, and that motion is fully briefed, ECF Nos. 21, 23, 24.

### III.    LEGAL STANDARDS

#### A.    Motion to Dismiss for Failure to State a Claim

Under Federal Rule of Civil Procedure 12(b)(6), the court will dismiss a complaint that does not "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* In evaluating a motion under Rule 12(b)(6), a court accepts all well-pleaded factual allegations in the complaint as true. *See Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (per curiam); *see also Atherton v. D.C. Off. of the Mayor*, 567 F.3d 672, 681 (D.C. Cir. 2009). Although the plausibility standard does not require "detailed factual allegations," it "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555. Nor will "'naked assertion[s]' devoid of 'further factual enhancement'" suffice. *Iqbal*, 556 U.S. at 678 (alteration in original) (quoting *Twombly*, 550 U.S. at 557).

While a Title VII plaintiff need not establish a prima facie case of discrimination, retaliation, or hostile work environment at the pleading stage, he must allege sufficient facts beyond mere legal conclusions to allow the court to draw a reasonable inference of discrimination,

retaliation, or hostile work environment from the complaint. *See Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 510-11 (2002). "If a Title VII plaintiff fails to plead 'sufficient factual matter' to state a . . . claim that is 'plausible on its face,' then the district court should dismiss the case before discovery." *Chambers v. District of Columbia*, 35 F.4th 870, 878 (D.C. Cir. 2022) (en banc) (quoting *Harris v. D.C. Water & Sewer Auth.*, 791 F.3d 65, 68 (D.C. Cir. 2015)).

In determining whether a complaint fails to state a claim, a court may consider only the facts alleged in the complaint and "any documents either attached to or incorporated in the complaint and matters of which [the court] may take judicial notice." *N. Am. Butterfly Ass'n v. Wolf*, 977 F.3d 1244, 1249 (D.C. Cir. 2020) (alteration in original) (quoting *Hurd v. District of Columbia*, 864 F.3d 671, 678 (D.C. Cir. 2017)). As noted, the court may take judicial notice of Mr. Phelan's EEO materials without converting a motion to dismiss into one for summary judgment. *Golden*, 319 F. Supp. 3d at 366 n.2.

### B.    Leave to Amend

Under Federal Rule of Civil Procedure 15(a)(2), when a plaintiff is not entitled to amend his complaint as a matter of course, he may amend only "with the opposing party's written consent or the court's leave." Fed. R. Civ. P. 15(a)(2). The court should freely grant such leave "when justice so requires." *Id.* "[T]he grant or denial of leave to amend is committed to a district court's discretion." *Firestone v. Firestone*, 76 F.3d 1205, 1208 (D.C. Cir. 1996). However, "it is an abuse of discretion to deny leave to amend unless there is sufficient reason, such as 'undue delay, bad faith or dilatory motive[,] repeated failure to cure deficiencies by [previous] amendments[,] [or] futility of amendment.'" *Id.* (second and fourth alterations in original) (quoting *Foman v. Davis*, 371 U.S. 178, 182 (1962)). "If the district court denies leave [to amend], it must state its reasons." *Barkley v. U.S. Marshals Serv. ex rel. Hylton*, 766 F.3d 25, 38 (D.C. Cir. 2014).

## IV.    DISCUSSION

While Mr. Phelan's amended complaint is far from a model of clarity, he appears to allege that FEMA violated Title VII by discriminating against him based on his race, color, national origin, sex, and age; retaliating against him for engaging in protected activity; and creating a hostile work environment. *See* ECF No. 20 ¶¶ 98-152; *see generally* ECF No. 23. The Secretary argues that Mr. Phelan failed to timely exhaust his administrative remedies for multiple claims, ECF No. 21, at 10-13, and that his remaining claims fail on the merits, *id.* at 14-25. The court agrees.

### A.    Administrative Exhaustion

A plaintiff may not initiate a civil action under Title VII until he has exhausted his administrative remedies for each discrete discriminatory or retaliatory act. *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 113 (2002). Exhaustion allows federal agencies "to handle matters internally whenever possible." *Brown v. Marsh*, 777 F.2d 8, 14 (D.C. Cir. 1985). The exhaustion process begins when a federal employee "initiate[s] contact" with his agency's EEO counselor, which must be done within forty-five days of the alleged discriminatory or retaliatory act. 29 C.F.R. § 1614.105(a)(1) (2024). "Each discrete discriminatory act starts a new clock for filing charges alleging that act"—meaning that any claim arising out of an act not raised with an EEO counselor within forty-five days cannot be pursued. *Morgan*, 536 U.S. at 113.

The forty-five-day rule differs slightly in the context of hostile work environment claims, which "are different in kind from discrete acts." *Id.* at 115. By nature, hostile work environment claims "involve[] repeated conduct" and "therefore cannot be said to occur on any particular day"; rather, they "occur[] over a series of days or perhaps years." *Id.* Accordingly, a hostile work environment claim is timely "[p]rovided that an act contributing to the claim occurs within the filing period." *Id.* at 117. But the act must be one that "contribut[es] to the claim." *Id.* That is,

the untimely and timely actions must be "adequately connected to each other . . . as opposed to being an array of unrelated discriminatory or retaliatory acts." *Baird v. Gotbaum*, 662 F.3d 1246, 1252 (D.C. Cir. 2011).

If the employee's grievance is not resolved through informal counseling, the employee may file a formal complaint, which the agency investigates and adjudicates. 29 C.F.R. § 1614.106. The issues raised in the formal administrative complaint are the ones that may be addressed in later court proceedings. *See Bain v. Off. of the Att'y Gen.*, 648 F. Supp. 3d 19, 44 (D.D.C. 2022). After a formal complaint is filed, the agency has 180 days to investigate. 29 C.F.R. § 1614.106(e)(2). The agency either provides a final decision within this time period, or it does not. *Bain*, 648 F. Supp. 3d at 45. If it does, the employee has two choices: (1) appeal that decision to the EEOC within thirty days; or (2) file suit in federal court within ninety days. *See* 42 U.S.C. § 2000e-16(c); 29 C.F.R. §§ 1614.401(a), 1614.402(a); *see In re James*, 444 F.3d 643, 644 (D.C. Cir. 2006). Where the employee takes the first option, as Mr. Phelan did here, ECF No. 1-1, at 3, he may file a civil action in federal district court after the EEOC has issued its final decision, 42 U.S.C. § 2000e-16(c); *see Perry v. Raimondo*, 101 F.4th 55, 57 (D.C. Cir. 2024).

The failure to exhaust administrative remedies is an affirmative defense, which means that the defendant bears the burden to plead and prove the plaintiff's failure to exhaust. *Bowden v. United States*, 106 F.3d 433, 437 (D.C. Cir. 1997). Here, the Secretary argues that Mr. Phelan failed to exhaust three categories of claims: (1) any claims based on his allegedly involuntary

May 2017 detail; (2) any age-based discrimination claims; and (3) any retaliation claims.  ECF No. 21, at 10-13.  The court agrees with the Secretary on the first two but disagrees on the third.[4]

*May 2017 detail.*  Mr. Phelan first contacted a DHS EEO counselor on March 26, 2022, two days after FEMA reposted the OER Director position.  *See* ECF No. 21, at 4-6; ECF No. 21-1, at 3.  That initial contact in March 2022 was well beyond the forty-five-day window from his May 2017 detail to OER.  Accordingly, Mr. Phelan failed to exhaust any discrimination or retaliation claims related to his 2017 detail.

Mr. Phelan also failed to exhaust a hostile work environment claim concerning his May 2017 detail.  As noted, to be properly exhausted, untimely and timely actions must be "adequately connected to each other."  *Baird*, 662 F.3d at 1252.  Examples include incidents that "involve[d] the same type of employment actions, occurred relatively frequently, and were perpetrated by the same managers."  *Panarello v. Zinke*, 254 F. Supp. 3d 85, 101 (D.D.C. 2017) (alteration in original) (quoting *Morgan*, 536 U.S. at 120).  Mr. Phelan wholly fails to allege a connection between his involuntarily detail to the OER in May 2017 and his concerns about his non-selection for the OER Director position in 2022; accordingly, he may not rely on his May 2017 detail to support his hostile work environment claim.

*Age-based claims.*  In his April 2022 formal EEO complaint, Mr. Phelan checked the boxes for "race," "color," "national origin" and "gender," but he did not check the box for "age."  ECF

---

[4] As the Secretary points out in her reply brief, Mr. Phelan fails to address these and other deficiencies in his opposition brief; instead, he "merely restates the allegations in his [a]mended [c]omplaint," almost verbatim.  ECF No. 24, at 1; *compare* ECF No. 20 ¶¶ 1-152, *with* ECF No. 23, at 3-31 (quoting, with virtually no alterations, the contents of the amended complaint). "[A]n argument in a dispositive motion that the opponent fails to address in an opposition may be deemed conceded."  *Rosenblatt v. Fenty*, 734 F. Supp. 2d 21, 22 (D.D.C. 2010).  While the court could deem the Secretary's motion conceded, it will nevertheless address the merits of Mr. Phelan's claims.

No. 21-1, at 3.  Because "the scope of the administrative complaint determines the scope of exhaustion," *Bain*, 648 F. Supp. 3d at 47, the court concludes that Mr. Phelan has not properly exhausted any claims related to age discrimination.[5]

 *Retaliation*.  In his April 2022 formal EEO complaint, Mr. Phelan checked the boxes for "race," "color," "national origin" and "gender," but he did not check the box for "retaliation/reprisal."  ECF No. 21-1, at 3.  While this would typically be fatal, as it was for his age-related claims, the record reflects that Mr. Phelan's narrative accompanying his formal complaint included allegations of retaliation and that the agency and the EEOC treated his case as involving retaliation claims.  Specifically, after Mr. Phelan filed his formal EEO complaint in April 2022, an employee in DHS's EEO office emailed him, stating, in relevant part:

> Good morning Mr. Phelan,
>
> Thank you for your response.  We are reviewing your additional claims and will provide a response to you.  You identified retaliation as a basis; however, you did not select it on the formal complaint form you submitted, and it wasn't selected on the counselor's report (both are attached).  If you select retaliation as a basis you must provide the dates of your prior EEO activity as requested on the form.  Please provide the dates for your prior EEO activity and I'll review and add retaliation as a basis.

*Id.* at 10.  While the record before the court is incomplete, it appears that Mr. Phelan subsequently provided information concerning his alleged retaliation, because the agency addressed retaliation in its investigation, *id.* at 20 (management affidavit referring to retaliation), and the EEOC's Office of Federal Operations addressed retaliation in affirming the decision of the AJ, ECF No. 1-1, at 1.

---

[5] In any event, Mr. Phelan may not pursue age-related claims under Title VII.  *See Musgrove v. District of Columbia*, 775 F. Supp. 2d 158, 167 & n.7 (D.D.C. 2011) (explaining that "Title VII does not prohibit discrimination on the basis of age").

Accordingly, the court will dismiss Mr. Phelan's claims premised on his May 2017 detail and his age, but it will proceed to the merits of his retaliation claims. This leaves the following claims before the court:

- Claim One: Disparate treatment, retaliation, and hostile work environment premised on FEMA's denial of Mr. Phelan's request for the names of the members of the first screening panel for the OER Director position, ECF No. 20 ¶¶ 100-11;

- Claim Two: Disparate treatment, retaliation, and hostile work environment premised on FEMA's cancellation of the original posting for the OER Director position, *id.* ¶¶ 112-25;

- Claim Three: Disparate treatment premised on FEMA's decision not to refer Mr. Phelan for an interview for the OER Director position in February 2022, *id.* ¶¶ 126-31; and

- Claim Four: Disparate treatment premised on FEMA's decision not to refer Mr. Phelan for an interview for the re-advertised OER Director position in May 2022 and the agency's subsequent failure to provide him information about the hiring process, *id.* ¶¶ 132-52.

### B.    Failure to State a Claim

Mr. Phelan alleges that the Secretary violated Title VII by discriminating against him on the basis of race, color, sex, and national origin, retaliating against him for protected activity, and creating a hostile work environment. ECF No. 20 ¶¶ 100-52. The Secretary responds that Mr. Phelan fails to plausibly allege discrimination, retaliation, or hostile work environment of any kind under Title VII. ECF No. 21, at 13-25. The court agrees with the Secretary and will dismiss Mr. Phelan's remaining claims.

### 1.    Disparate treatment

Under Title VII, it is unlawful for an employer to discriminate against an employee with respect to his "compensation, terms, conditions, or privileges of employment" because of his "race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a)(1). A plaintiff bringing a claim under Section 2000e-2(a)(1) must plead that (1) he belongs to a protected class; (2) he suffered an

adverse employment action; and (3) a causal connection exists between his protected characteristic and the adverse employment action. *See Baloch v. Kempthorne*, 550 F.3d 1191, 1196 (D.C. Cir. 2008). Because Mr. Phelan is a member of a protected class on the basis of his race, color, sex, and national origin, the first element is satisfied. *See Griggs v. Duke Power Co.*, 401 U.S. 424, 431 (1971) (holding that Title VII prohibits racial discrimination against both majority- and minority-group plaintiffs). Accordingly, the court focuses its analysis on the second and third elements: adverse action and causation.

*Adverse action.* The Secretary largely accepts Mr. Phelan's allegations that he suffered adverse actions and seeks to challenge the requirement only as it applies to the denial of his request for the names of the members of the screening panel for the OER Director position in February 2022 (Claim One) and his request for information about the hiring process in May 2022 (Claim Four). ECF No. 21, at 15-18. Mr. Phelan asserts that FEMA's failure to provide the requested information "adversely impacted [his] ability to determine where or if his application was lacking." ECF No. 20 ¶¶ 102-03. The Secretary responds that the denials of Mr. Phelan's requests were not adverse actions because they did not bring about a tangible change in his duties or working conditions. ECF No. 21, at 16-18.

The Supreme Court recently clarified the standard for an actionable adverse employment action in *Muldrow v. City of St. Louis*, 601 U.S. 346 (2024). There, the Court explained that a plaintiff must simply allege "some harm" regarding the terms and conditions of his employment to support a disparate treatment claim. *Id.* at 350. That holding is largely consistent with the D.C. Circuit's 2022 en banc decision in *Chambers*, in which the Circuit held that a plaintiff need only show some change with respect to the terms and conditions of his employment (as opposed to a heightened "objectively tangible harm") to plead an adverse action. 35 F.4th at 874-75.

The Secretary argues that the adverse-action standard articulated in *Chambers* (and now *Muldrow*) does not apply in this case because Mr. Phelan is covered by the federal-sector provisions of Title VII, whereas the plaintiffs in *Chambers* (and *Muldrow*) were not.  ECF No. 21, at 15-18.  In the Secretary's view, a federal-sector plaintiff may only bring a claim based on an adverse "personnel action" as defined by the Civil Service Reform Act, 5 U.S.C. § 2302(a)(2)(A).  *Id.* at 15.  The court disagrees.  The D.C. Circuit has consistently held that the private- and federal-sector provisions of Title VII should be construed similarly.  *See Czekalski v. Peters*, 475 F.3d 360, 363 (D.C. Cir. 2007); *Singletary v. District of Columbia*, 351 F.3d 519, 523-24 (D.C. Cir. 2003); *see also Bain*, 648 F. Supp. 3d at 54 ("[*Chambers*] did not so much as hint that the private-sector and federal-sector discrimination provisions should no longer be construed alike.  If anything, it affirmed the status quo.").  Moreover, the *Chambers* Court overruled *Brown v. Brody*, 199 F.3d 446 (D.C. Cir. 1999), which itself involved a federal employee, *id.* at 448; *see Chambers*, 35 F.4th at 882.  This suggests that the *Chambers* Court intended its interpretation of the adverse action requirement, as subsequently informed by *Muldrow*, to apply to all Title VII discrimination claims, not just those brought by employees in the private sector.  *See Chambers*, 35 F.4th at 878-82*.

In an attempt to circumvent *Chambers*, the Secretary argues that the Supreme Court's reasoning in *Babb v. Wilkie*, 589 U.S. 399 (2020), controls.  In *Babb*, the Court interpreted the federal-sector provision of the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 633(a), holding that "age must be a but-for cause of discrimination—that is, of differential treatment—but not necessarily a but-for cause of a personnel action itself."  589 U.S. at 405-06.  In reaching this conclusion, the Court assumed that the meaning of "personnel action" in the federal-sector provision of the ADEA was the same as the Civil Service Reform Act's definition

of the term. *Id.* The Secretary contends that, since Title VII's federal-sector provisions also use the term "personnel action," only adverse personnel actions as defined by the Civil Service Reform Act are actionable for federal-sector Title VII plaintiffs. ECF No. 21, at 16-18. This difference matters, in the Secretary's view, because the Civil Service Reform Act includes in its definition of personnel actions "other, unenumerated 'change[s] in duties, responsibilities, or working conditions' only if they are 'significant,'" *id.* at 15-16 (alteration in original) (quoting 5 U.S.C. § 2302(a)(2)(A)(xii)), and the "significant" change requirement is a higher standard than that applied under *Chambers*.

However, the *Babb* Court's assumption was just that—an assumption. The Court observed that the Civil Service Reform Act's definition of "personnel action" was "consistent with the term's meaning in general usage, and [the Court] assume[d] that it has the same meaning under the ADEA." *Babb*, 589 U.S. at 405. "That observation has no effect on whether that definition must [also] govern Title VII federal-sector claims." *Doe v. Austin*, No. 22-CV-3474, 2024 WL 864270, at *10 (D.D.C. Feb. 29, 2024). Accordingly, like several other judges in this district, this court rejects the Secretary's argument that *Babb* requires federal-sector Title VII plaintiffs to make a different showing than private-sector Title VII plaintiffs to establish an adverse employment action. *See, e.g.*, *Wilson v. Noem*, No. 20-CV-100, 2025 WL 1000666, at *21-22 (D.D.C. Apr. 3, 2025) (noting that "*Babb* [was] nothing new" when the D.C. Circuit decided *Chambers* (quoting *Austin*, 2024 WL 864270, at *10)); *Stewart v. U.S. Dep't of Agric.*, No. 23-CV-1194, 2024 WL 4332618, at *4 (D.D.C. Sep. 27, 2024) (holding that *Babb* did not alter the meaning of "personnel action" in Title VII's federal-sector provision); *see also Turner v. Buttigieg*, No. 23-CV-1665, 2024 WL 4346332, at *8 (D.D.C. Sep. 30, 2024) (declining to construe *Chambers* as limited to private-sector Title VII suits); *Cameron v. Blinken*, No. 22-CV-31, 2023 WL 5517368, at *4

(D.D.C. Mar. 22, 2023) (same); *Garza v. Blinken*, No. 21-CV-2770, 2023 WL 2239352, at *5 (D.D.C. Feb. 27, 2023) (same); *Bain*, 648 F. Supp. 3d at 54-55 (same).[6]

Aside from her argument about the federal-sector provisions of Title VII, the Secretary does not attempt to argue that the denials of Mr. Phelan's requests for information do not constitute adverse actions. ECF No. 21, at 15-18. Accordingly, the court concludes that Mr. Phelan has sufficiently alleged that he suffered adverse actions when FEMA denied his request for the names of the members of the first screening panel in February 2022 and ignored his request for information about the hiring process in May 2022. The question, then, becomes one of causation.

*Causation*. With respect to each of Mr. Phelan's remaining claims, the Secretary argues that Mr. Phelan has failed to sufficiently allege a causal connection between any adverse action and a protected characteristic. *Id.* at 18-22. The court agrees.

A plaintiff may plausibly allege a causal relationship between an adverse action and a protected characteristic "by showing 'that []he was treated differently from similarly situated employees who are not part of the protected class.'" *Brown v. Sessoms*, 774 F.3d 1016, 1022 (D.C. Cir. 2014) (quoting *George v. Leavitt*, 407 F.3d 405, 412 (D.C. Cir. 2005)). While the burden is "not onerous" at the motion-to-dismiss stage, it requires more than the bald assertion that there is a similarly situated comparator. *SS & T, LLC v. Am. Univ.*, No. 19-CV-721, 2020 WL 1170288, at *4 (D.D.C. Mar. 11, 2020) (quoting *Nanko Shipping, USA v. Alcoa, Inc.*, 850 F.3d 461, 467 (D.C. Cir. 2017)). "A plaintiff's assertion that [he] is similarly situated to other[s] . . . is just a legal conclusion—and a legal conclusion is never enough." *Id.* at *5 (second and third

---

[6] Indeed, the D.C. Circuit recently applied the *Muldrow* standard to a federal employee's claim under the ADEA, the same statute at issue in *Babb*. *Van Horn v. Del Toro*, No. 23-5169, 2024 WL 4381186, at *2-3 (D.C. Cir. Oct. 3, 2024) (per curiam) (noting that the employer also conceded that the actions at issue were viable personnel actions under the ADEA).

alterations in original) (quoting *Bekkem v. Wilkie*, 915 F.3d 1258, 1275 (10th Cir. 2019)); *see Keith v. U.S. Gov't Accountability Off.*, No. 21-CV-2010, 2022 WL 3715776, at *3 (D.D.C. Aug. 29, 2022) (granting a motion to dismiss for failure to state a claim and reasoning that "to plausibly plead the causation element [through similarly situated comparators], [the plaintiff] must allege some facts to ground a reasonable inference that the plaintiff was in fact similarly situated to comparator employees").

The court begins with Mr. Phelan's claims that FEMA denied his request for the names of the members of the first screening panel in February 2022 (Claim One) and ignored his request for information about the hiring process in May 2022 (Claim Four).   ECF No. 20 ¶¶ 100, 132. Mr. Phelan states that he was entitled to this information under 5 C.F.R. § 317.501 and that he "is not aware of any female, white or non-white, who was . . . denied information regarding the rating of her job application to assist her in advancing in her career."   *Id.* ¶ 104.   The trouble for Mr. Phelan is twofold.   First, Section 317.501 does not require FEMA to disclose specific information like the names of members of a screening panel.  Instead, it provides in relevant part:

> Individuals are entitled to obtain information from an agency regarding the process used to recruit and select candidates for career appointment to SES positions.  Upon request, applicants must be told whether they were considered qualified for the position and whether they were referred for appointment consideration.  Also, they may have access to questionnaires or other written material regarding their own qualifications, except for material that would identify a confidential source.

5 C.F.R. § 317.501(e).   Second, Mr. Phelan does not allege that a similarly situated comparator *asked* for the same information and received it.   In this way, he has failed to identify a specific comparator who was treated more favorably.   *See, e.g.*, *Jones v. Ass'n of Am. Med. Colls.*, No. 22-CV-1680, 2023 WL 2327901, at *11 (D.D.C. Mar. 2, 2023) ("Nowhere in [the plaintiff's] complaint does he proffer factual allegations describing 'any comparator employees [outside of

his race], how they were similarly situated, or how they were treated differently than [him].'" (second and third alterations in original) (quoting *Harris v. Mayorkas*, No. 21-CV-1083, 2022 WL 3452316, at *6 (D.D.C. Aug. 18, 2022))); *SS & T, LLC*, 2020 WL 1170288, at *4 (dismissing a race discrimination claim under 42 U.S.C. § 1981 where the plaintiff failed to identify similarly situated comparators); *Beaulieu v. Barr*, No. 15-CV-896, 2019 WL 5579968, at *4 (D.D.C. Oct. 29, 2019) (dismissing a Title VII claim where the plaintiff did not "identify any 'comparator' employees who were treated differently"). Because he only speculates about the existence of similarly situated comparators, Mr. Phelan has failed to state a claim concerning his requests for information about the screening panels and hiring process for the OER Director position in February and May 2022.[7]

Mr. Phelan's claim that the Secretary discriminated against him by canceling and re-advertising the OER Director position in February 2022 (Claim Two), ECF No. 20 ¶ 112, also fails for lack of a similarly situated comparator who was treated more favorably. Indeed, because FEMA elected to cancel the vacancy announcement in February 2022, *all* applicants were treated the same way: they were no longer eligible for the position. *See Porter v. Shah*, 606 F.3d 809, 816 (D.C. Cir. 2010) (holding that an "overhaul" of selection criteria that "affected all applicants equally" and had "nothing in its text or about its circumstances [tying] it to discrimination" did not indicate pretext); *Adeyemi v. District of Columbia*, 525 F.3d 1222, 1228-29 (D.C. Cir. 2008) (holding that a re-advertising of a position to seek higher-level candidates was not indicative of discrimination because all employees of the same level were passed over); *Ginger v. District of Columbia*, 477 F. Supp. 2d 41, 48 (D.D.C. 2007) (finding no evidence of disparate treatment where

---

[7] In any event, the Secretary has since revealed the identities of the screening-panel members to Mr. Phelan in the course of this case. *See* ECF No. 21-1, at 28 ¶ 79 (February 2022 screening panel members), 31 ¶ 115 (May 2022 screening panel members).

a unit reorganization "equally affected" all employees).  In the absence of an allegation that a similarly situated competitor was treated more favorably, Mr. Phelan cannot proceed with his disparate treatment claim concerning FEMA's decision to cancel the original vacancy announcement for the OER Director position and re-advertise it.

This leaves Mr. Phelan's claims about not being selected for an interview in February 2022 (Claim Three) and May 2022 (Claim Four).  ECF No. 20 ¶¶ 126, 132.  Mr. Phelan principally claims that he should have been referred for an interview because he was more qualified for the position than the other applicants, citing to his graduate degrees in Management and Education from Johns Hopkins University and prior FEMA experience as an FCO.  *Id.* ¶ 26.  He argues that, in light of his qualifications, his failure to make the interview list must have been due to discrimination.  *Id.* ¶ 113.  Here again, Mr. Phelan's allegations fall short because he fails to connect his non-selection with any protected characteristic.

To survive a motion to dismiss, the complaint must allege facts sufficient to allow the court "to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Iqbal*, 556 U.S. at 678.  While, "[a]t the motion to dismiss stage, a plaintiff need not 'rule out every possible lawful explanation,'" he must "dispel any 'obvious alternative explanation[s].'"  *Ho v. Garland*, 106 F.4th 47, 54 (D.C. Cir. 2024) (second alteration in the original) (quoting *Wilson v. Ark.-Dep't of Human Servs.*, 850 F.3d 368, 373 (8th Cir. 2017)).  Here, the "obvious alternative explanation," as Mr. Phelan himself concedes, is that the selection panels preferred a candidate with a law degree, which Mr. Phelan does not have.  ECF No. 20 ¶¶ 27-28, 75-76, 84-88, 120, 128, 130-31.

Mr. Phelan takes issue with the fact that the position description did not specify a requirement or preference for a law degree, but that is of no moment.  "[J]ob descriptions are often

phrased in general terms, and employers then make the ultimate hiring decision in light of more specific factors." *Jackson v. Gonzales*, 496 F.3d 703, 709 (D.C. Cir. 2007). An employer may prefer a candidate due to the candidate's particular qualifications, even when those qualifications are not included in the original job description. *See Banker v. Averill*, No. 22-CV-1445, 2025 WL 2192983, at *3 (D.D.C. Aug. 1, 2025) (dismissing disparate treatment claim where the plaintiff and the person hired both "possessed the necessary education and the event-planning experience to satisfy the . . . criteria" for the position at issue); *Baylor v. Powell*, 459 F. Supp. 3d 47, 55 (D.D.C. 2020) (noting that courts should defer to the government's decision to consider other credentials and skills not expressly listed in the job description). Mr. Phelan does not dispute that a law degree is a beneficial credential for the OER Director position, and he has thus failed to offer sufficient allegations to draw a reasonable inference that one of his protected characteristics, as opposed to his lack of a law degree, was the reason he was not selected for an interview. *See* ECF No. 20 ¶ 27 (explaining that the panel preferred someone "with a full career in civil rights who had a law degree" and therefore "reached the consensus that Mr. Phelan was qualified[,] but not [the] best qualified"); ECF No. 21-1, at 46 (including requirement for "comprehensive knowledge of principles and concepts of civil rights case laws" in the OER Director job description). Moreover, "[w]hile facts showing that a job applicant was 'significantly better qualified for the job' than the person hired may raise an inference of discrimination, 'the qualifications gap must be great enough to be inherently indicative of discrimination.'" *Banker*, 2025 WL 2192983, at *3 (first quoting *Aka v. Wash. Hosp. Ctr.*, 156 F.3d 1284, 1294 (D.C. Cir. 1998) (en banc); then quoting *Holcomb v. Powell*, 433 F.3d 889, 897 (D.C. Cir. 2006)). Mr. Phelan has not alleged facts suggesting a significant qualifications gap between him and Ms. Saucedo, the candidate who was ultimately selected for the position. To the contrary, he admits that Ms. Saucedo has a law degree, which he

does not, and around two decades of experience in private practice and the federal government. *See* ECF No. 20 ¶¶ 35-40.[8]

While Mr. Phelan invokes his race, color, national origin, and sex multiple times throughout his amended complaint, "bare allegations about h[is] protected status are insufficient to show that the treatment [he] received . . . was *because of*" his protected statuses. *Peters v. District of Columbia*, 873 F. Supp. 2d 158, 194 (D.D.C. 2012); *see Yuvienco v. Vilsack*, No. 23-CV-186, 2024 WL 727712, at *3 (D.D.C. Feb. 22, 2024) (explaining that a plaintiff cannot state a claim for discrimination by "merely . . . invok[ing] [his] race [or national origin] in the course of a claim's narrative" (second and fourth alterations in original) (quoting *Doe #1 v. Am. Fed'n of Gov't Emps.*, 554 F. Supp. 3d 75, 105 (D.D.C. 2021))). Courts have routinely concluded that such bare assertions are insufficient to survive a motion to dismiss. *See, e.g.*, *Webster v. Burgum*, No. 23-CV-3050, 2025 WL 1279355, at *4-5 (D.D.C. May 2, 2025) (dismissing a complaint in which the plaintiff "fail[ed] to plead sufficient facts to plausibly suggest non-selection was 'because of' his race"); *Watkins v. Dep't of Just.*, No. 23-CV-766, 2024 WL 4362156, at *5 (D.D.C. Sep. 30, 2024) (holding that the plaintiff's exclusion from an opportunity for a promotion did not constitute discrimination when she did not allege sufficient facts to tie that exclusion to her protected class); *Xiaofeng v. Pompeo*, No. 15-CV-1040, 2019 WL 1697868, at *10-11 (D.D.C. Apr. 17, 2019) (dismissing a national-origin discrimination claim where the plaintiff did "not allege any facts to link her failure to receive promotions to her national origin or accent"); *cf. Chappelle v. Becerra*, No. 22-CV-87, 2024 WL 4332116, at *9 (D.D.C. Sep. 27, 2024) (holding

---

[8] Mr. Phelan notes that at least one member of the second selection committee thought that one of the candidates who advanced to the interview stage had a law degree when she did not. ECF No. 20 ¶ 29; ECF No. 23, at 9. That does not undercut the panel's preference for candidates with a law degree, and, in any event, Ms. Saucedo—the candidate who was ultimately hired—did have a law degree. ECF No. 20 ¶¶ 35, 135.

that a reasonable jury could infer discriminatory intent where an African-American male plaintiff was not selected for an internal promotion, but two women, neither of whom possessed more relevant experience than the plaintiff, were selected); *McManus v. Kelly*, 246 F. Supp. 3d 103, 111-13 (D.D.C. 2017) (denying a motion to dismiss the plaintiff's discrimination claim where "the only plausible explanation for FEMA's decisions [wa]s that the agency was discriminating against [the plaintiff] on the basis of her race and age").

Nor do Mr. Phelan's remaining allegations suggest sufficient causation to withstand a motion to dismiss.  For example, Mr. Phelan maintains that "FEMA has never had a non-minority or male Office of Equal Rights Director," ECF No. 20 ¶ 139, but he simultaneously states that he served as the OER's Acting Director from September 2017 to July 2018, *id.* ¶ 14; ECF No. 21, at 22; *see Kaempe v. Myers*, 367 F.3d 958, 963 (D.C. Cir. 2004) ("Nor must we accept as true the complaint's factual allegations insofar as they contradict exhibits to the complaint or matters subject to judicial notice.").  He also alleges that a member of the second selection panel criticized typos in his application while overlooking typos in Ms. Saucedo's application, ECF No. 20 ¶¶ 60-62, but he does not plausibly connect this to any protected characteristic.  Finally, he complains that the second selection panel did not interview him because some of his ratings unfairly went down, whereas Ms. Saucedo's ratings inexplicably improved, *id.* ¶¶ 142-47, but a court "does not 'second-guess how an employer weighs particular factors in the hiring decision,'" *Banker*, 2025 WL 2192983, at *3 (quoting *Jackson v. Gonzales*, 496 F.3d 703, 709 (D.C. Cir. 2007)).  Moreover, as support, Mr. Phelan cites an individual rating sheet that is unsigned by the panel and contains a member's preliminary ratings made before the panel met to discuss and collectively rate candidates.  *Compare* ECF No. 21-1, at 90-93 (final panel ratings), *with* ECF No. 23-3 (individual ratings).  The fact that certain ratings changed after the panel conferred is

neither unsurprising nor indicative of discrimination.  *See* ECF No. 21-1, at 18-19, 27-28 ("The screening panel reviews the documentation and provide[s] their individual ratings.  The screening panel convenes to provide their overall rating of each applicant to see who would be referred to the interview panel.").[9]  Accordingly, the mere fact that Mr. Phelan was not selected for an interview for the OER Director position does not suffice to establish an inference of discrimination.

*     *     *

Because Mr. Phelan has not plausibly alleged that FEMA's denial of his request for the names of the members of the first screening panel in February 2022, its cancellation of the original posting for the OER Director position, its decisions not to refer him for interviews in February 2022 and May 2022, and its failure to provide him information about the hiring process in May 2022 were connected to any protected characteristic, the court will dismiss his disparate treatment claims.

## 2.    Retaliation

Title VII "prohibits an employer from 'discriminat[ing] against' an employee . . . because that individual 'opposed any practice' made unlawful by Title VII or 'made a charge, testified,

---

[9] Specifically, Mr. Phelan takes issue with the ratings of panel members Paul Huang and Cynthia Sphisak, who downgraded some of their individual ratings after the panel's discussion.  In his opposition to the Secretary's first motion to dismiss, Mr. Phelan attached an affidavit by Mr. Huang, which explains that the panel members evaluated candidates individually before "discuss[ing] [candidates'] qualifications" as a group and making "final recommendations."  ECF No. 18-3, at 3.  Accordingly, a member's preliminary ratings could naturally change after a discussion with the other panel members, and Mr. Phelan fails to allege any facts suggesting that this decisionmaking process was discriminatory.  While Mr. Phelan did not attach Mr. Huang's affidavit to his amended complaint or second opposition, the court will take judicial notice of the document.  *See Hall v. Dep't of Com.*, No. 16-CV-1619, 2018 WL 2002483, at *1 (D.D.C. Apr. 30, 2018) (noting that a court may rely on documents not attached to an amended, operative complaint if "the documents were either 'incorporated by reference in the complaint, or documents upon which the plaintiff's complaint necessarily relies'" (quoting *Ward v. D.C. Dep't of Youth Rehab. Servs.*, 768 F. Supp. 2d 117, 119 (D.D.C. 2011))).

assisted, or participated in' a Title VII proceeding or investigation." *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 56 (2006) (first alteration in original) (quoting 42 U.S.C. § 2000e-3(a)).  To establish retaliation, a plaintiff must allege that (1) he engaged in statutorily protected activity; (2) he suffered a materially adverse action by his employer; and (3) a causal link connects the protected activity and the adverse action.  *Jones v. Bernanke*, 557 F.3d 670, 677 (D.C. Cir. 2009).  An activity is considered "protected" under Title VII if it "involves opposing alleged discriminatory treatment by the employer or participating in legal efforts against the alleged treatment." *Beyene v. Hilton Hotels Corp.*, 815 F. Supp. 2d 235, 247 (D.D.C. 2011), *aff'd* 573 F. App'x 1 (D.C. Cir. 2014) (quoting *Lemmons v. Georgetown Univ. Hosp.*, 431 F. Supp. 2d 76, 91-92 (D.D.C. 2006)).

Mr. Phelan alleges that the Secretary retaliated against him for complaining about his May 2017 transfer by denying his request for information about the first screening panel (Claim One) and canceling the original posting (Claim Two), both in February 2022.  ECF No. 20 ¶¶ 102-03, 108-09, 112, 115.  The Secretary counters that Mr. Phelan did not engage in any protected activity since his "[c]omplaint does not allege that [he] asserted discrimination based on a protected characteristic when he complained to various FEMA officials" about his May 2017 transfer.  ECF No. 21, at 15.  The court again agrees with the Secretary.  While Mr. Phelan alleges that he complained to agency officials in the aftermath of his involuntary transfer, ECF No. 20 ¶¶ 4-5, he does not allege that his complaints sounded in discrimination, *see generally id.*  "Not every complaint entitles its author to protection from retaliation under Title VII . . . because the plaintiff must demonstrate that [he] complained to the employer of some unlawful discrimination based on [his] membership in a protected class." *Keith*, 2022 WL 3715776, at *5 (first alteration in original) (quoting *Belov v. World Wildlife Fund, Inc.*, No. 21-CV-1529, 2021 WL 4773236,

at *5 (D.D.C. Oct. 13, 2021)).  Mr. Phelan cannot turn his earlier complaints into protected activity by now asserting, years later, that his May 2017 transfer was unlawfully "based on his race, sex, and age."  ECF No. 20 ¶ 108; *see Ravenell v. Mayorkas*, No. 22-CV-3548, 2024 WL 1344460, at *13 (D.D.C. Mar. 29, 2024) (dismissing a retaliation claim where there was "no indication that [the plaintiff's] complaints involved any claims of unlawful discrimination under Title VII as opposed to simply frustration about a workplace argument"); *Belov*, 2021 WL 4773236, at *6 (finding that the plaintiff's workplace complaints did not constitute protected activity where she did not "allege[] that she reported sex discrimination to Human Resources" or otherwise suggest that "going to Human Resources about a travel dispute qualifie[d] as protected activity").

Even if Mr. Phelan had engaged in protected activity, his retaliation claims would still fail for lack of causation.  *Bernanke*, 557 F.3d at 677.  To establish causation, Mr. Phelan must allege sufficient facts to suggest that his "protected activity was a but-for cause of the alleged adverse action."  *Univ. of Tex. Sw. Med. Ctr. v. Nassar*, 570 U.S. 338, 362 (2013).  One way a plaintiff can do so is "by showing that the employer had knowledge of the employee's protected activity, and that the adverse personnel action took place shortly after that activity."  *Mitchell v. Baldrige*, 759 F.2d 80, 86 (D.C. Cir. 1985).  "Temporal proximity can . . . support an inference of causation, but only where the two events are 'very close' in time."  *Woodruff v. Peters*, 482 F.3d 521, 529 (D.C. Cir. 2007) (citation omitted) (quoting *Clark Cnty. Sch. Dist. v. Breeden*, 532 U.S. 268, 273-74 (2001)).  While there is no bright-line rule, "the Supreme Court has cited circuit decisions suggesting that[,] in some instances[,] a three-month period between the protected activity and the adverse employment action may, standing alone, be too lengthy to raise an inference of causation." *Hamilton v. Geithner*, 666 F.3d 1344, 1357-58 (D.C. Cir. 2012).

Mr. Phelan alleges that he complained to the then-Acting Director of FEMA about his allegedly involuntary transfer "immediately (the next day)" after it occurred in May 2017. That was four-and-a-half years before FEMA denied his request for the names of the members of the first screening panel in February 2022. Such a long gap cannot support an inference of causation. *See Tallbear v. Perry*, 318 F. Supp. 3d 255, 263-64 (D.D.C. 2018) (dismissing a retaliation claim where the protected activity occurred eight months before the alleged adverse action); *Wilson v. Mabus*, 65 F. Supp. 3d 127, 133-34 (D.D.C. 2014) (finding that a four-month gap could not support an inference of causation); *Bergbauer v. Mabus*, 934 F. Supp. 2d 55, 86 (D.D.C. 2013) (same). Mr. Phelan alleges no other basis for a causal connection between his protected activities and any adverse action. Accordingly, the court will dismiss his retaliation claims in Claims One and Two.

### 3.    Hostile Work Environment

To survive a motion to dismiss a hostile work environment claim, the plaintiff must sufficiently allege that his "workplace is permeated with 'discriminatory intimidation, ridicule, and insult' that is 'sufficiently severe or pervasive to alter the conditions of [his] employment and create an abusive working environment.'" *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21 (1993) (citation omitted) (quoting *Meritor Sav. Bank, FSB v. Vinson*, 477 U.S. 57, 65, 67 (1986)). "[A] few isolated incidents of offensive conduct do not amount to actionable harassment." *Stewart v. Evans*, 275 F.3d 1126, 1134 (D.C. Cir. 2002). In determining whether a plaintiff can proceed with a hostile work environment claim, the court "looks to the totality of the circumstances, including the frequency of the discriminatory conduct, its severity, its offensiveness, and whether it interferes with an employee's work performance." *Ayissi-Etoh v. Fannie Mae*, 712 F.3d 572, 577 (D.C. Cir. 2013) (quoting *Baloch*, 550 F.3d at 1201). This standard is a "high bar." *Jones v. Zeldin*,

No. 24-CV-2681, 2025 WL 859855, at *3 (D.D.C. Mar. 19, 2025) (quoting *Gulakowski v. Barr*, No. 19-CV-32, 2019 WL 4469241, at *4 (D.D.C. Sep. 18, 2019)).

As noted, Mr. Phelan has only exhausted a hostile work environment claim as it concerns his non-selection for the OER Director position in February 2022 and its attendant circumstances (Claims One and Two). *See supra* p. 11. But the allegations that FEMA denied his request for information about the first screening panel and canceled the original posting, ECF No. 20 ¶ 100-15, fail to plausibly suggest a hostile work environment. Instances of sufficiently severe or pervasive conduct for a hostile work environment include "us[ing] a deeply offensive racial epithet when yelling at [the plaintiff]," *Ayissi-Etoh*, 712 F.3d at 577, and forcing an employee to work in an unheated storage room for over a year, *see Singletary*, 351 F.3d at 528 (reversing and remanding the denial of the plaintiff's hostile work environment claim). Mr. Phelan's allegations are nowhere close to this level. Instead, they more closely parallel those in *Nurridin v. Bolden*, 674 F. Supp. 2d 64 (D.D.C. 2009), where the court found that the plaintiff's claims based on "nonpromotions, denial of leave, and termination" fell short of alleging a hostile work environment, even when combined with disparaging remarks, close scrutiny by supervisors, and criticisms of his work, *id.* at 93-95. Mr. Phelan's claims concerning his non-selection for the OER Director position in February 2022 amount to "workplace grievances," which "even when understandably frustrating for the employee[,] are not sufficiently severe to survive a motion to dismiss." *Zeldin*, 2025 WL 859855, at *3-4 (noting that "[s]uspensions and administrative leave are insufficient to establish a hostile work environment"); *see Moore v. U.S. Dep't of State*, 351 F. Supp. 3d 76, 91-93 (D.D.C. 2019) (dismissing a hostile work environment claim that "largely concern[ed] [the plaintiff's] prospects for advancement, as opposed to verbal or physical abuse in his actual work environment"); *Fields v. Vilsack*, 207 F. Supp. 3d 80, 93-95 (D.D.C. 2016) (dismissing a claim

alleging that the plaintiff's performance evaluation was "impermissibly lowered" and that she was denied an opportunity to seek a promotion); *Aldrich v. Burwell*, 197 F. Supp. 3d 124, 136-39 (D.D.C. 2016) (finding that suspensions, reprimands from supervisors, and demeaning treatment were insufficient to support a claim of hostile work environment); *Mason v. Geithner*, 811 F. Supp. 2d 128, 195 (D.D.C. 2011) (holding that the denial of an employee's requests for a transfer to another office and the employee's "involuntary" resignation were "discrete employment actions that are not readily incorporated into a hostile work environment claim"); *Allen v. Napolitano*, 774 F. Supp. 2d 186, 206 (D.D.C. 2011) ("[P]erformance reviews and non-selection for a position are insufficiently severe to support a hostile work environment claim."). Accordingly, the court will dismiss the hostile work environment aspects of Claims One and Two.

### C.    Leave to Amend

In his opposition to the Secretary's motion to dismiss, Mr. Phelan suggests that the court should grant him leave to file a "second amended [c]omplaint" if it is otherwise inclined to dismiss the case. ECF No. 23, at 35; *see* Fed. R. Civ. P. 15(a)(2). The court does not entertain such requests absent a proper motion. *Rosen-Kellogg v. Noem*, No. 24-5158, 2025 WL 1806015, at *3 (D.C. Cir. July 1, 2025) (per curiam) ("A 'bare request in an opposition to a motion to dismiss—without any indication of the particular grounds on which amendment is sought—does not constitute a motion within the contemplation of' Federal Rule of Civil Procedure 15(a)." (quoting *Belizan v. Hershon*, 434 F.3d 579, 582 (D.C. Cir. 2006))). In any event, Mr. Phelan has already amended his complaint once in response to the Secretary's motion to dismiss, ECF No. 20, and he is unable to withstand the Secretary's second motion to dismiss, ECF No. 21, suggesting that any further amendment would be futile, *Firestone*, 76 F.3d at 1208. The court will therefore decline to *sua sponte* grant leave to amend.

## V.    CONCLUSION

For the foregoing reasons, the court will grant Defendants' Motion to Dismiss, ECF No. 21, and dismiss Mr. Phelan's complaint with prejudice.  A contemporaneous order will issue.

_____
LOREN L. ALIKHAN
United States District Judge

Date:    September 25, 2025